In re Patrick M. MURGILLO, Debtor.

Patrick M. MURGILLO, an
individual, Appellant,

v.

CALIFORNIA STATE BOARD OF
EQUALIZATION, Appellee.

BAP No. SC–93–2327–OJF.
Bankruptcy No. 90–06920–B11.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted July 21, 1994.

Decided Oct. 26, 1994.

Amended Opinion Jan. 10, 1995.

Before OLLASON, JONES and FENNING[1], Bankruptcy Judges.

### AMENDED OPINION

OLLASON, Bankruptcy Judge.

Patrick Murgillo ("Murgillo"), the debtor and appellant in this case, appeals the bankruptcy court's order allowing sales and use tax claims associated with a seller's permit and tax account in his name. The appellee is the California Board of Equalization ("the Board"). We AFFIRM.

1. Hon. Lisa Hill Fenning, Bankruptcy Judge for the Central District of California, sitting by designation.

## STATEMENT OF FACTS

The facts are undisputed.

Murgillo filed the instant chapter 11 [2] petition on August 14, 1990.[3]

Prior to filing bankruptcy, Murgillo and Dennis Dolan ("Dolan") had been partners in a partnership that owned and operated the Old Ocean Beach Cafe, located in San Diego.

By written agreement, dated December 15, 1989 and effective January 1, 1990, Murgillo transferred his 25% interest in the Old Ocean Beach Cafe to Dolan. The transfer agreement provided for "transfer [of Murgillo's] ownership and all rights of partnership in the Old Ocean Beach Cafe to Cafe Restaurants, L.P." It also stated that Cafe Restaurants, L.P.—now Dolan's sole proprietorship, would "assume and release [Murgillo] from all existing and future liabilities of the Old Ocean Beach Cafe partnership, effective as of January 1, 1990."

The cafe's seller's permit and liquor license [4] were in both partners' names. The liquor license was not transferred as part of the transfer agreement or otherwise. The seller's permit was not transferable, but was required to be cancelled and reissued. Cal.

Code Regs., tit. 18, § 1699(e) (1990)—the California sales and use tax regulation.

Murgillo did not notify the Board of the transfer of the business, nor did he deliver the seller's permit to the Board for cancellation, as required by § 1699(e). Neither did Dolan apply for a new seller's permit, pursuant to § 1699(e)(2).

Consequently, Murgillo's name was not removed from the seller's permit or tax accounts. Moreover, his name appeared on the first and second quarter 1991 Sales & Use Tax Returns filed by Old Ocean Beach Cafe.

Murgillo did not list the Board as a creditor on his bankruptcy schedules. Based on the tax returns, however, the Board filed two proofs of claim in the case: one, dated February 13, 1991, representing a priority tax claim for prepetition sales and use tax and interest, for January 1, 1990 to August 13, 1990, in the amount of $34,258.52; the other, dated September 17, 1991, an administrative expense claim for postpetition sales and use tax, interest [5] and penalties, for August 15, 1990 to June 30, 1991, in the amount of $30,284.42.

According to the bankruptcy court, the tax at issue is a "sales tax levied for the privilege

---

2. Unless otherwise indicated, all "chapter," "section" and "code" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. The bankruptcy court's finding of fact regarding the filing date is inconsistent with Murgillo's opening brief and debtor's disclosure statement, which state that the date of filing the chapter 11 petition was August 14, 1991. The proofs of claim were for prepetition and postpetition taxes based on the 1990 filing date. Neither party has disputed this finding of fact or its impact on the allowed claims; therefore, the panel will not consider this variance in its ruling.

4. Although the facts of this case concern the "seller's permit," Murgillo also refers to the "liquor license." According to the California statutes, these are distinct documents regulated by different departments and issued for different purposes. See generally, Cal.Bus.Prof.Code §§ 23000–25762 (West 1994) and Cal.Rev. & Tax.Code §§ 6051–6074 (West 1994). The tax regulation at issue concerns the seller's permit, which is required for sales and use tax purposes. A transfer of a liquor license is subject to delin-

quent sales and use taxes that arise "in full or in part out of the exercise of the privilege of an alcoholic beverage license." Cal.Bus. & Prof. Code § 24049 (West 1994). The liquor license in this case was not transferred but was abandoned by order of the bankruptcy court. Nevertheless, Murgillo's tax liability remained because his name also appeared on the seller's permit and sales and use tax accounts.

5. This interest claim represented interest on the postpetition taxes only, ordinarily allowable as a first priority administrative expense. *In re Del Mission Ltd.*, 998 F.2d 756, 757 (9th Cir.1993). The bankruptcy court subsequently found that this postpetition claim did not meet the requirements for an administrative expense and allowed it as a general unsecured claim. The code forbids postpetition interest on an unsecured claim, *Id.;* § 506(b). On the other hand, a postpetition tax claim would ordinarily receive first priority administrative status, pursuant to §§ 503(b)(1)(B), (C) and 507(a)(1). However, the Board has not appealed the order, and neither has Murgillo raised an issue as to the claim amount. Therefore, the panel declines to discuss the designation and amount of the allowed general unsecured claim because these issues are not before the panel.

of selling tangible personal property at retail, measured by gross receipts." *See* Cal.Rev. & Tax.Code § 6051 (West 1994).

Murgillo discovered that his name was still on the cafe's liquor license following his filing for chapter 11 protection. He then disclosed his legal title to the liquor license in his second amended disclosure statement. Murgillo also disclosed that he did not have an equitable interest in the license because all rights and liabilities of his partnership interest were conveyed to his partner via the transfer agreement. On or about October 24, 1991, the bankruptcy court entered its order allowing Murgillo to abandon any and all interest held by the estate in the liquor license.

Although the Board's claims had been filed prior to the second amended disclosure statement, Murgillo omitted the claims from his plan. The court confirmed Murgillo's plan of reorganization on January 17, 1992.

Murgillo filed an objection to the Board's claims in October, 1992. In his objection, he denied his liability under the regulation. After notice and hearing, his objection was overruled by the bankruptcy court. The bankruptcy court concluded that Murgillo and Dolan had failed to comply with the requirements of § 1699(e); thus Murgillo's sale of the business did not absolve him from the tax liability. Moreover, at the hearing, the judge stated: "I think as a matter of law I'm constrained to find that the state does have a ... claim...." By order of November 16, 1993, the court overruled Murgillo's objection and allowed the Board an unsecured priority tax claim for the prepetition taxes of $34,258.52, and a general unsecured

claim for the postpetition taxes of $30,-284.42.[6] This appeal was taken by Murgillo, at which time the plan of reorganization was almost fully performed.

## ISSUES

Whether the bankruptcy court erred as a matter of law by applying the provisions of § 1699(e) to Murgillo; by allowing the Board's claims in the belief that it was bound by state law; and by failing to apply principles of equity to disallow valid state claims?

## STANDARD OF REVIEW

The panel reviews questions of law *de novo*, *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 245 (9th Cir.1989), and findings of fact for clear error. *In re Holm*, 931 F.2d 620, 622 (9th Cir.1991). Interpretation of state law is reviewed *de novo*. *In re Park at Dash Point*, 985 F.2d 1008, 1010 (9th Cir. 1993).

## DISCUSSION

Murgillo's appeal concerns the ruling on his objection to the allowance of the Board's claims, pursuant to § 502 and rule 3007. In addition, Murgillo's objection also raised the issue of his tax liability. The bankruptcy court has authority to determine the tax liability of a debtor pursuant to § 505, and the bankruptcy court properly ruled on that issue.

The code provides, in pertinent part, that the court shall allow a claim to which an objection has been raised except to the extent that it is unenforceable against the debt-

---

**6.** A potential argument existed that the bankruptcy court in this case both improperly disallowed the Board's postpetition claim as an administrative expense and relegated it to a lower priority classification as an general unsecured claim. The Ninth Circuit recently analyzed related circumstances in a chapter 7 case in *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064 (9th Cir.1994). In that case the IRS objected to the bankruptcy court's disallowance of its tardily filed unsecured priority tax claim. On appeal, the district court ruled that the claim should be relegated to a lower priority distribution as a tardily filed unsecured claim pursuant to § 726(a)(3). The IRS appealed to the Ninth Circuit, which reversed, holding that: (1) the claim was allowable as a

priority tax claim, pursuant to § 507(a)(7) because it met the plainly stated requirements for an allowed claim under §§ 501 and 502 and, therefore, (2) it should retain its priority distribution status despite its tardiness.

The instant case is distinguishable from *Pacific Atlantic Trading Co.* because the record reflects that the bankruptcy judge's motivation for disallowing the administrative expense priority was his belief that the statutory requirements for an administrative claim had not been met. Furthermore, the Board did not object, appeal or cross appeal the court's order which allowed its second claim as a general unsecured claim.

Therefore, the starting point for the panel's review will be the claims as allowed.

or under any agreement or applicable law. § 502(b)(1).

■ A duly executed proof of claim is prima facie evidence of the validity and amount of a claim. Rule 3001(f). The burden then switches to the objecting party to present evidence to overcome the *prima facie* case. *In re Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir.1988). The ultimate burden of persuasion is on the claimant. *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991).

### A. Application of § 1699(e) to Murgillo.

■ Murgillo contends on appeal that it is unfair that the estate should be liable for sales and use taxes when Murgillo was no longer an owner of the business which was generating the taxes. In this regard, he states that § 1699(e) does not apply to someone in his situation, *i.e.,* a partner that has withdrawn while the remaining partner continues the business.

The Board, on the other hand, argues that Murgillo was being taxed as a result of "his status as a partner in the partnership *as reflected on the seller's permit and in the Board's files and records."* (Emphasis in original.)

■ A claim is a right to payment. § 101(5)(A). State law is the substantive law applied to determine the origin and existence of a claim, unless the code provides otherwise. *In re Sparkman,* 703 F.2d 1097, 1099 (9th Cir.1983). Regulations, pursuant to the state Revenue and Taxation Code, have the force and effect of state law. *Alta–Dena Dairy v. San Diego County,* 271 Cal.App.2d 66, 74, 76 Cal.Rptr. 510, 516 (1969).

■ California statutes are interpreted according to their plain meaning:

In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.

Cal.Code Civ.P. § 1858 (West 1994).

■ This statutory construction rule is in accord with Supreme Court decisions.[7]

Section 1699(e) provides, in pertinent part, as follows:

(e) ... A permit shall be held by persons actively engaging in or conducting a business as a seller of tangible personal property. Any person not so engaged shall forthwith surrender his permit to the Board for cancellation. The board may revoke the permit of a person found to be not actively engaged in or conducting a business as a seller of tangible personal property. Upon discontinuing or transferring a business, a permit holder shall promptly notify the board and deliver his permit to the board for cancellation. To be acceptable, the notice of transfer or discontinuance of a business must be received in one of the following ways:

(1) Oral or written statement to a board office or authorized representative, accompanied by delivery of the permit, or followed by delivery of the permit upon actual cessation of the business. The permit need not be delivered to the board, if lost, destroyed or is unavailable for some other acceptable reason, but notice of cessation of business must be given.

(2) Receipt of the transferee or business successor's application for a seller's permit may serve to put the board on notice of the transferor's cessation of business.

. . . .

---

7. The starting point in every case involving construction of a statute is the language itself. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975). "In determining the meaning of any statute, the words of the statute are 'the primary, and ordinarily the most reliable, source of interpreting' its meaning." *Watt v. Alaska,* 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). Thus, when the language of the statutes is plain, "the sole function of the courts is to enforce it according to its terms." *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993), citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), and citing *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Patterson v. Shumate,* —— U.S. ——, ——–——, 112 S.Ct. 2242, 2246–47, 119 L.Ed.2d 519 (1992).

Unless the permit holder who transfers the business notifies the board of the transfer, or delivers the permit to the board for cancellation, he will be liable for taxes, interest and penalties ... incurred by his transferee who with the permit holder's actual or constructive knowledge uses the permit in any way.... The liability shall continue and include all liability incurred up to the time the board receives notice of the transfer.

Cal.Code Regs., tit. 18, § 1699(e) (1990).

Murgillo transferred the business to his partner. He now contends that this was not the type of transfer that § 1699(e) was intended to regulate. He argues, without authority, that the statute is intended to apply to third party transferees who wrongfully operate without obtaining a new permit. In contrast, under the transfer agreement, Murgillo merely withdrew from the partnership, and Dolan, whose name was already on the seller's permit, merely continued operating the cafe, Murgillo contends.

The Board asserts that the regulation does not distinguish between authorized and unauthorized usage, and that its purpose is to facilitate the issuance of a permit to a new party.

Assuming, *arguendo*, that the regulation seeks to prevent wrongful use of the seller's permit, the panel concludes that use of a seller's permit containing the transferor's name following either type of transfer may be wrongful. Either situation involves a transfer of the business but not of liability under the seller's permit since the seller's permit is not transferable[8]; thus, the taxing authority must rely on the named individual(s).

8. In contrast, a liquor license is transferable pursuant to statute. *See* Cal.Bus. & Prof.Code §§ 24070–24082 (West 1994).

9. Section 15016(1) provides as follows:
When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actu-

Finally, Murgillo argues that he cannot be liable because his liability for the business was extinguished under the terms of the transfer agreement as well as under the California partnership statutes. For example, Cal.Corp.Code § 15033 and 15035(1)(a) (West 1994) provide that a partner has no authority to bind his copartners to new obligations after the dissolution and subsequent termination of the partnership except for the purpose of winding up its affairs. In addition, Cal.Corp.Code § 15041(10) (West 1994) provides that use of the partnership name by the person continuing the business does not of itself make the individual property of the "deceased" partner liable for any debts contracted by the continuing partner.

He also argues that the fact that the bankruptcy court approved abandonment of the liquor license shows that he had no interest in the property being taxed.

The panel does not find Murgillo's arguments convincing. It further finds that Murgillo's reference to the liquor license serves to confuse the fact of his liability under the distinct seller's permit.

The regulation plainly states that in the case of a transfer of a business, notice must be given to the Board. Furthermore, it provides that a person no longer engaged in conducting a business shall forthwith surrender his permit. The plain language of the regulation states that it is a separate liability under the law.

Moreover, the ex-partner whose name appears on the permit may be, in effect, representing or consenting to representation of himself as a partner to the taxing authority and, on that basis, would be liable under the state partnership law. *See* Cal.Corp. Code § 15016 (West 1994).[9]

al or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the apparent partner making the representation or consenting to its being made.

Murgillo simply failed to take the action required. If the results are harsh, the remedy lies with the California legislature or administrative office, not with the bankruptcy court.

The panel finds that Murgillo did not meet his burden to overcome the evidence of his liability under the law, and that the Board's claims are valid.

## B. Equitable Powers and Claim Allowance.

 Notwithstanding that the panel herein affirms the validity of the Board's claims, Murgillo contends that the bankruptcy court erroneously concluded that it was constrained by state law to allow the claims and that it failed to apply equitable principles. Specifically, Murgillo argues that this was a classic case of form over substance that led to an inequitable result. *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). The inequity, according to Murgillo, is the negative impact these claims will have upon the estate and the confirmed plan of reorganization. Murgillo contends that although the court realized the unfairness of the situation, it failed to use the power it had to disallow the state claims.[10]

The Board, on the other hand, contends that the law is clear and Murgillo failed to take steps to terminate his liability for the taxes. Even courts of equity must follow the law, the Board contends. *Hedges v. Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 74–75, 37 L.Ed. 1044 (1893).

 Even though a claim may be valid and enforceable under state law, the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law. *Pepper v. Litton*, 308 U.S. at 304, 60 S.Ct. at 244. The bankruptcy court does not apply the law of the state in determining what claims are allowable and how a debtor's assets will be distributed. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 162, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946).

The question before the panel is how a bankruptcy court sits as a court of equity in the realm of claim allowance.

 Equitable principles govern in bankruptcy proceedings. *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). Nevertheless, it is clear that the principles of equity may not be invoked in a "freewheeling fashion ... they also necessarily operate within the boundaries set by statute." *Matter of Tucson Yellow Cab Co., Inc.*, 789 F.2d 701, 704 (9th Cir.1986).

 The bankruptcy court derives its equitable powers from § 105(a) of the code.[11] A court may exercise its equitable power only as a means to fulfill some specific code provision; it may not use its equitable powers to achieve a result not contemplated by the code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988).

The Ninth Circuit has held that claims should be allowed if they meet the plainly stated requirements[12] of the code's allowance provisions. *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064 (9th Cir.1994) (according to plain language of §§ 501 and 502, the claim

---

10. Apparently the bankruptcy court struggled with the harshness of the result. The hearing transcript reflects this, as follows: "The Court: ... I have some of the same trouble that [debtor's counsel] has with this situation. As a pure technical legal analysis, I think everything you say is correct and I think we have a liability in that pure technical legal sense. My problem is that even if this were the classic IRS situation of a responsible person or responsible officer liability, that depends upon some facts of the debtor being involved in doing something at a time when this tax liability arose and he didn't cause it to be paid, and what we have is a situation where Mr. Murgillo had withdrawn from the partnership, had transferred his partnership pri-

or to the time that either of these tax liabilities arose but simply didn't notify the state that he was no longer a partner and could be liable on this and that's the premise and the question is whether that's enough of a legal premise upon which to affix a tax liability, you know, on what amounts to, analogously, the responsible person kind of liability...."

11. Section 105(a) states, in part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

12. *See* footnote 6, *supra*.

would be allowed so long as the requirements are met, regardless of whether it was tardily filed, because none of the statutory exceptions refer to tardy claims); *see also In re Dominelli*, 820 F.2d 313 (9th Cir.1987); *In re Johnson*, 756 F.2d 738 (9th Cir.), *cert. denied, Johnson v. Righetti*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

■■■ Section 502(b) provides that a claim will be allowed unless it falls within one of the enumerated exceptions. The Board's claims do not fall within an exception to allowance pursuant to § 502(b)(1). The bankruptcy court, therefore, should not use its equitable powers to carve out new exceptions. *In re Fesco Plastics Corp., Inc.*, 996 F.2d 152, 156 (7th Cir.1993).

Murgillo's argument that the bankruptcy court should make an equitable exception to the general rule of § 502(b) would serve to bypass the specific code provision for equitable treatment of an allowed claim—§ 510(c). This subsection provides for the "subordination of otherwise allowable claims when principles of equity would be offended by the allowance of such claims on a parity with those of other creditors." 3 *Collier on Bankruptcy*, § 510.02 at 510–4 to 510–5 (15th ed. 1994).[13]

Murgillo has cited several Supreme Court cases which were decided prior to the Bankruptcy Reform Act of 1978 ("the Act"), which first enacted subsection 510(c). These cases

held that either a claim's disallowance or subordination "may be necessitated by certain cardinal principles of equitable jurisprudence." *In re Ahlswede*, 516 F.2d 784, 787 (9th Cir.), *cert. denied*, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975). For example, the Ninth Circuit Court of Appeals stated that before a bankruptcy court may disallow or subordinate a claim:

"... some basis must exist of the sort traditionally cognizable by equity as justifying its intervention, such as fraud, breach of fiduciary duties, mismanagement, overreaching; in fact, any breach of the multitude of 'rules of fair play and good conscience' (*Pepper v. Litton* ... 308 U.S. at 310, 60 S.Ct. at 247) traditionally enforced by a court of equity will suffice."

*Ahlswede* at 788.

■■■ However, the Act codified the holding of *Pepper v. Litton* and its progeny in Section 510(c)—the equitable subordination provision.[14]

This panel has previously held that "[w]here there is a specific provision governing ... determinations, it is inconsistent with the interpretation of the Bankruptcy Code to allow such determinations to be made under different standards through the use of the court's equitable powers." *In re Pacific Express, Inc.*, 69 B.R. 112, 115 (9th Cir. BAP 1986).

**13.** The bankruptcy judge stated that because the claims did not benefit the estate and because of the circumstances under which they were imposed they might be subject to a plan proposal for their equitable subordination, pursuant to § 510(c). Since the treatment of the claims in the plan is not yet an issue, equitable subordination is not presently before the panel.

**14.** The legislative history to § 510(c) states that Congress did not intend to preclude a bankruptcy court from completely disallowing a claim in appropriate circumstances. H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977). The Supreme Court in *Pepper v. Litton* stated that since the Bankruptcy Act § 57 (now § 502(j)) allowed reconsideration and disallowance of an allowed claim according to the equities of the case, "disallowance ... in light of equitable considerations may originally be made." 308 U.S. at 305, 60 S.Ct. at 244. The Court went on to state: "Hence, ... the bankruptcy court has full power to inquire into the validity of any claim asserted

against the estate and to disallow it if it is ascertained to be without lawful existence." *Id.*

In light of the above holding, the enactment of § 510(c) and more recent case law, appropriate equitable considerations in claim allowance, therefore, would be those that harmonize with § 502(b) of the code, *e.g.,* a determination as to whether a claim exists and is lawful; whether there is misconduct on the part of the creditor which renders the claim invalid or unenforceable against the debtor; and whether the debtor has a valid defense. *See* 3 *Collier on Bankruptcy, supra; In re 268 Limited*, 85 B.R. 101, 105 (9th Cir. BAP 1988). Thus, "[a] supposed inequity resulting when an innocent party in good faith asserts a legally valid claim will not [suffice]" as an equitable basis to disallow a claim. *In re Ahlswede*, 516 F.2d at 788, citing *Comstock v. Group of Institutional Investors*, 335 U.S. 211, 68 S.Ct. 1454, 92 L.Ed. 1911 (1948).

In this case, the state's claims were found to be valid and enforceable, thus allowable under § 502(b).

Therefore, we hold that the proper exercise of the bankruptcy court's equitable powers under § 502 is through investigation into the existence, validity and enforceability of claims leading to their allowance or disallowance; and the proper exercise of equitable powers regarding allowed claims is through the equitable subordination provisions of § 510(c). *See also* 3 *Collier on Bankruptcy, supra; In re Mobile Steel Co.,* 563 F.2d 692, 699 (5th Cir.1977) (equitable considerations can only justify subordination of claims, not their disallowance); *In re Delta Smelting & Refining Alaska, Inc.,* 53 B.R. 877 (Bankr.D.Alaska 1985); *but see In re Outdoor Sports Headquarters, Inc.,* 168 B.R. 177 (Bankr.S.D.Ohio 1994).

The Supreme Court cases cited by Murgillo do not stand for the proposition that the bankruptcy court may disallow a valid state tax claim. Murgillo relies on *Pepper v. Litton* for the proposition that, even though a claim may be valid and enforceable under state law, the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law. 308 U.S. at 304, 60 S.Ct. at 244. We agree with this general proposition, but close examination of *Pepper* is necessary to delineate the bankruptcy court's role here. In *Pepper,* the Supreme Court approved the equitable subordination of an insider's claim, because his conduct in obtaining the state court judgment in question amounted to fraud upon the creditors of the estate. While the opinion uses the terms "subordination or disallowance" as if they are interchangeable, the heart of the analysis focuses the equities of distribution as the key question reserved to the exclusive jurisdiction of the bankruptcy court. *Pepper* does not stand for the proposition that a claim that is valid under state law can be totally invalidated where the creditor's conduct is blameless. Its ruling was predicated upon that creditor's misconduct relating to its claim.

Similarly, Murgillo cites *Vanston Bondholders Protective Committee v. Green* for the proposition that the bankruptcy court must apply federal, not state law in determining the allowability of claims and the distribution of assets. In *Vanston,* the issue was whether unsecured bondholders were entitled to be paid interest on interest, and whether post-petition interest should be allowed. The underlying validity of the contract claim was not challenged. In holding that bankruptcy law governed the allowability of postpetition interest, the Court stated:

> Legal suspension of an obligation to pay is an adequate reason why no added compensation or penalty should be enforced for failure to pay.

329 U.S. at 166–67, 67 S.Ct. at 242. Because the payment suspension was required to accomplish the equitable distribution purposes of bankruptcy, the Court held it appropriate to disallow postpetition interest, and interest on interest.

Read together, these cases emphasize the bankruptcy court's equitable power to examine and evaluate claims that are valid and enforceable under state law, for the purpose of determining their relative right to payment out of the estate compared with other, similarly valid claims. Such an examination is an essential attribute of the bankruptcy process, because only rarely are the assets of the estate sufficient to pay all valid claims before the bankruptcy court. *Pepper* and *Vanston* recognize that the claims allowance process can result in an adjustment in the claim's priority based upon the creditor's inequitable conduct, or a limitation on the amount of the claim in light of federal bankruptcy purposes. We agree that in this sense the allowance of claims is exclusively federal in nature.

We disagree, however, with Murgillo's attempt to convert this review into an unlimited license to invalidate otherwise valid state-based claims, in the absence of any allegations of inequitable conduct justifying subordination under the *Pepper* standard, or any overriding bankruptcy purpose dictating disallowance. No inequitable conduct on the part of the taxing authority has been alleged here. Nor has Murgillo articulated any overriding bankruptcy principle that would be served by disallowing this otherwise valid tax claim. Obviously, other creditors would be paid more if the taxing authority is paid less, but that does not constitute a principled basis for disallowing this claim.

The panel holds that the bankruptcy court did not err as a matter of law by allowing the Board's state law claims. The record shows that the evidence supported Murgillo's liability under § 1699(e), and that the state claims were thus allowable, pursuant to § 502(b).

### CONCLUSION

The bankruptcy court did not commit legal error when it determined Murgillo's tax liability pursuant to the plain language of the California sales and use tax regulation § 1699(e). The bankruptcy court did not commit legal error when it allowed the Board's claims based on its determination of the validity of the state claims, pursuant to § 502(b)(1). Finally, the bankruptcy court did not commit legal error by failing to disallow the claims on the basis of equitable principles where the state claims met the requirements for allowance under the code. Accordingly, we AFFIRM.