**In re Barbara Leslie MERRICK, Debtor.**

**Errol J. GORDON, Appellant,**

**v.**

**Robert S. WHITMORE, Chapter 7 Trustee, Appellee.**

**BAP No. CC-93-2344-VJH.**
**Bankruptcy No. SB92-14393 DN.**
**Adv. No. SB92-1411.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 19, 1994.

Decided Dec. 8, 1994.

Arnold M. Johnson, Los Angeles, CA, for appellant.

Michelle C. Araneta, San Bernardino, CA, for appellee.

Before VOLINN, JONES and HAGAN, Bankruptcy Judges.

*OPINION*

VOLINN, Bankruptcy Judge:

A bankruptcy trustee sought sanctions against several state court defendants for willful violation of the automatic stay of 11 U.S.C. § 362(a) when the state court, after determining that defense issues were not affected by the automatic stay, granted the defendants' motion for a summary judgment, dismissed the lawsuit, and awarded them costs. The bankruptcy court ruled to the contrary, holding that the automatic stay was applicable. Because a defendant need not seek relief from the automatic stay in order to defend himself against a lawsuit commenced by the debtor, we reverse.

FACTS AND PROCEEDINGS BELOW

On March 5, 1990, prior to the bankruptcy case, the debtor, Barbara Leslie Merrick, and Joyce Marie Pentard[1] sued appellant, Errol Jay Gordon, and several other defendants for $1,000,000.00 in state court based on fraud relating to the sale of a business. Some of the defendants raised counterclaims and cross-claims, but Gordon did not. In January 1992, the defendants filed motions for summary judgment to dismiss the lawsuit. A hearing was set for February 26, 1992. On February 6, the plaintiffs asked for an extension of time to file a response to the motions. The state court extended the deadline for filing opposition to the motions to April 2, 1992, and rescheduled the hearing for April 16, 1992. On March 30, 1992, prior to the state court hearing, and without responding to the summary judgment motions, both plaintiffs filed chapter 7 bankruptcy petitions. The debtors each listed the lawsuit as an asset of their respective estates.

On April 1, 1992, the debtors' state court counsel filed notice of the bankruptcies and the automatic stay in state court and moved to take the proceedings off calendar, alleging that the plaintiffs, as debtors, lacked standing to proceed pending an order of the bankruptcy court. In reliance on the automatic stay, the trustee did not respond to the summary judgment motions. The debtors' motion apparently was denied, and hearing on the summary judgment motions was held on April 16. Debtors' counsel appeared at the hearing. The trustee did not appear, nor did

1. Pentard is also an individual debtor. The adversary proceedings in the companion cases were ordered consolidated below.

he move in bankruptcy court for a stay of the state court hearing.[2]

Gordon states without rebuttal that although other defendants appeared in state court on April 16, he did not appear, nor was he represented by counsel at the hearing. According to Gordon, the state court determined that the automatic stay did not affect its proceedings and ruled on the motions, dismissing the lawsuit. A minute order states summary judgments were granted, but does not mention the automatic stay. Judgment was entered on May 18, 1992. (No copy of the judgment appears in the record.) Some $12,000 in costs were assessed against the debtors. Merrick appealed this assessment to the California Court of Appeal and subsequently moved that court for an extension of time to file her brief.

On September 14, 1992, the trustee filed complaints in the bankruptcy court against the state court defendants for willful violation of the automatic stay. This complaint was premised on the defendants' postpetition pursuit of dismissal of the state court action and costs. The trustee then offered to enter into stipulations with the defendants to dismiss the complaint if they would agree to vacate the state court judgment and seek relief from the stay to re-file their summary judgment motions. Some of the defendants agreed to so stipulate. Gordon did not. On December 1, 1992, Gordon filed a "Remission of Costs" in state court, disclaiming any interest in the costs awarded to the prevailing defendants in that action. At this point, the state court appeal was mooted as to Gordon's position, which became defensive only. On April 2, 1993, the California Court of Appeal determined that Merrick's appeal was stayed by the automatic stay, because the cost assessment constituted an action against the debtor.

Subsequently, the trustee and the remaining defendants filed cross-motions for summary judgment on the trustee's complaint. On April 20, 1993, at the hearing on the cross-motions, the bankruptcy court offered to defer its ruling to allow the remaining defendants to join the stipulation. Although other of the remaining defendants agreed to stipulate, Gordon's counsel informed the court that his client was unavailable to authorize the stipulation.

The bankruptcy court then ruled for the trustee. The court characterized the state court lawsuit as property of the estate—a chose in action—and determined that the state court proceeding dismissing the debtors' cause of action violated the automatic stay. The bankruptcy court entered an order granting summary judgment for the trustee and denying defendants' cross-motions. The order held the state court judgment null and void and reserved jurisdiction over Gordon and another non-stipulating defendant to assess non-punitive sanctions.[3] The other remaining defendant subsequently joined the stipulation. On October 14, 1993, one of the stipulating defendants re-filed its summary judgment motion in the state court and was granted dismissal of the debtors' action.

On November 2, 1993, at the hearing to determine the trustee's damages, the bankruptcy court offered Gordon a last opportunity to join the stipulation to vacate the state court summary judgment. Gordon refused, and the court sanctioned Gordon alone $21,244.84 for the trustee's attorney's fees and costs. This figure included time spent drafting the trustee's attorney's employment application, an application for special counsel to proceed in the state court, and negotiations with counsel for other defendants.

2. Our record of the state court proceedings is incomplete. Debtor's counsel and the trustee's counsel each allege in various pleadings and affidavits, "Defendants proceeded with the State Court hearing on Defendants' motion for summary judgment relating to the Debtor's complaint, i.e., the property of this bankruptcy estate." However, Gordon asserts that he did not proceed, and the trustee does not dispute Gordon's assertions that he neither appeared nor was represented at this postpetition hearing, and that he brought no counterclaim against the debtors. The minute order for the April 16 hearing does not list an appearance by Gordon or his counsel.

3. A BAP motions panel dismissed Gordon's appeal from the summary judgment order as interlocutory. The issues are preserved in this appeal from the sanction order.

## ISSUES PRESENTED

Whether defensive action taken by a defendant in a state court lawsuit commenced by a debtor violates the automatic stay.

## STANDARD OF REVIEW

Questions of law and statutory interpretation are reviewed *de novo.* *In re Price,* 871 F.2d 97, 98 (9th Cir.1989).

## DISCUSSION

The essential issue is whether a defendant violates the automatic stay of § 362 by defending claims brought by a plaintiff debtor. This issue is distinct from whether the bankruptcy court can stay state court proceedings in its discretion. *See* 11 U.S.C. § 105(a); 28 U.S.C. § 2283. Neither the trustee nor the debtor moved for such relief.

The trustee's argument, with which the court agreed, starts with the proposition that a debtor's lawsuit constitutes a chose in action that is property of the estate under § 541. This premise in the abstract is correct. "[T]his paragraph will include choses in action and claims by the debtor against others...." Notes of Committee on the Judiciary, S.Rep. No. 989, 95th Cong., 2d Sess., 82–83 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. The trustee extrapolates from the foregoing that the defendants' motion to dismiss the lawsuit constituted a prohibited "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The automatic stay is a means of preserving the status quo for the trustee or the debtor.[4] However, this primary objective is inapplicable to the trustee's offensive action, which need not be attended by a stay.

This distinction is the basis for language in the various subsections of § 362(a), where the statute uses the language "against the debtor," § 362(a)(1); "against property of the estate," § 362(a)(2); or "to exercise control over property of the estate," § 362(a)(3). It is most unlikely that a contention by a defendant that the trustee's claim is unfounded can be equated with exercising dominion or control over property of the estate. The only place where the language permits a broader view is § 362(a)(8), where the automatic stay applies to the "commencement or continuation of a proceeding before the United States Tax Court *concerning* the debtor." (emphasis added). Thus, the operative subsections in the case at hand, (a)(1) and (a)(3), contemplate actions *"against"* the debtor and not "concerning" the debtor, which is much broader.[5]

The automatic stay gives the debtor a breathing spell from his creditors and allows the trustee to marshall assets of the estate for the benefit of creditors. While restraint of a defendant in a suit subject to prosecution by the estate arguably could contribute to an orderly processing of estate assets, we could find no case that supports the proposition that the automatic stay prevents a defendant from continuing to defend against a prebankruptcy lawsuit. To the contrary, there is substantial authority that the stay is inapplicable to postpetition defensive action in a prepetition suit brought by the debtor. The following portion of an opinion authored by Judge Posner is pertinent:

4. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

"The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that."
Notes of the Committee on the Judiciary, H.R.Rep. No. 585, 95th Cong., 1st Sess. 340–341 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97.

5. *Compare Delpit v. CIR,* 18 F.3d 768 (9th Cir. 1994) (debtor's appeal from Tax Court judgment is stayed by § 362(a)(1) because appeal involves continuation of a proceeding to recover a claim *against* the debtor) (emphasis supplied).

For in any event the automatic stay is inapplicable to suits *by* the bankrupt ("debtor," as he is now called). This appears from the statutory language, which refers to actions "against the debtor," 11 U.S.C. § 362(a)(1), and to acts to obtain possession of or to exercise control over "property of the estate," § 362(a)(3), and from the policy behind the statute, which is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors. H.R.Rep. No. 595, 95th Cong. & Admin.News 1978, p. 5787. The fundamental purpose of bankruptcy, from the creditors' standpoint, is to prevent creditors from trying to steal a march on each other, *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982), and the automatic stay is essential to accomplishing this purpose. There is, in contrast, no policy of preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it, subsection (a)(3) is no more applicable than (a)(1) is.

*Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n.*, 892 F.2d 575, 577 (7th Cir.1989). *Accord, United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C.Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); *Merchants & Farmers Bank of Dumas,. Ark. v. Hill*, 122 B.R. 539, 541 (E.D.Ark.1990).

The debtor cites *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987) for the proposition that an act which diminishes the value of a cause of action as an asset of the estate is subject to the automatic stay under § 362(a)(3). The trial court cited as support *In re Pro Football Weekly, Inc.*, 60 B.R. 824 (N.D.Ill.1986). Neither case supports the premise.

In *S.I. Acquisition*, a creditor sued a corporation, joining its principals under an "alter ego" theory of liability. The corporation filed bankruptcy. The plaintiff-creditor then severed the corporation and proceeded against the individual non-debtor defendants. The debtor asserted that these lawsuits were stayed by the automatic stay. The Fifth Circuit reasoned that, because the "alter ego" cause of action could be raised against the principals by the corporate debtor itself as well as by the creditor, the cause of action was property of the estate, for the benefit of all creditors. It therefore held that § 362 stayed the creditor from prosecution for its own benefit of this cause of action against the non-debtor defendants. The case addressed the question whether a *creditor* who *sues* for its own benefit on a cause of action available to a debtor is subject to the automatic stay. The case therefore is not apposite. The case points out, however, that the meaning of "possession" and "control" as used in § 362(a)(3) is one of dominion over the thing, not an effort to invalidate it.

Similarly off point, in *Pro Football*, the issue was whether to grant relief from the stay to allow a defendant to prosecute *counterclaims* against a debtor-plaintiff. Since a counterclaim is "an action or proceeding against the debtor," § 362(a)(1), relief from the stay must be sought. As indicated above, Gordon remitted his costs, thus eliminating any arguably affirmative aspect to the relief he obtained in state court.

It is clear that § 362 does not stay the hand of the trustee from continuing to prosecute a pre-bankruptcy lawsuit instituted by the debtor. *See Merchants & Farmers Bank of Dumas v. Hill*, 122 B.R. 539, 541 (E.D.Ark.1990) (collecting cases; debtors' counterclaim not stayed by § 362; only actions *against* debtor are stayed). Although no Ninth Circuit authorities explicitly deal with this issue, there are several other circuits in accord.[6]

6. *See Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3rd Cir.1991); *In re Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982) (provisions creating the automatic stay "do not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate"); *Carley Capital Group v. Fireman's Fund Insurance Company*, 889 F.2d 1126 (D.C.Cir.1989); *Martin–Trigona v. Champion*

Given this freedom for the debtor or the trustee to prosecute the debtor's claims, an equitable principle of fairness requires a defendant to be allowed to defend himself from the attack without imposing on him a gratuitous impediment in dealing with an adversary who suffers no correlative constraint. The *automatic stay should not tie the hands* of a defendant while the plaintiff debtor is given free rein to litigate. "Though this paragraph will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." Notes of Committee on the Judiciary, S.Rep. No. 989, 95th Cong., 2nd Sess., 82–83 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868.[7] While it is true that a successful defense to a lawsuit eliminates its alleged value, this results in no loss to the estate, as the debtor admits. There can be no loss of what does not exist.

The trustee contended that § 362 affords time for evaluation of the estate's assets and determination of the proper course of action relative thereto. If such time is needed, the trustee may seek a discretionary stay from the bankruptcy court pursuant to § 105. *See, e.g., In re Ruble,* 34 B.R. 37 (Bankr. N.D.Ohio 1983). Had there been such a motion, the defendants would have been entitled to notice and a hearing on the issue.

We note that the state court, in addition to awarding Gordon a judgment of dismissal of the action against him, also granted him an interest in the total costs awarded to all of the defendants, and that these costs were awarded postpetition. Assuming these costs were awarded in violation of the automatic stay, the record does not reveal that Gordon took any affirmative act postpetition to acquire or prosecute this interest, indicating instead that he disclaimed his interest prior to the hearing on the parties' cross-motions for summary judgment. There was no showing that Gordon caused the estate harm or disadvantage in this regard. Thus it appears on this record that Gordon did not willfully violate the stay.

Although this involves a finding of fact, the record indicates clearly that the court considered Gordon's refusal to vacate the state court judgment of dismissal *per se* to constitute sanctionable conduct. Remand on this record would be gratuitous.

## CONCLUSION

Summary judgment is REVERSED; the award of sanctions VACATED.

JONES, Bankruptcy Judge, dissenting:

I agree with the majority's conclusion that Gordon did not violate the automatic stay by participating in the motion for summary judgment. However, I disagree with the majority's conclusion that the motion for *costs* which was included in the motion for summary judgment was also not a violation.

The majority concludes that the state court award of costs to all the defendants merely granted Gordon an "interest" in the total costs to be awarded. Therefore, Gordon did not violate the stay because he did not take any further, affirmative action to enforce that interest.

In my opinion, at the moment the bankruptcy petition was filed, any further action on a pending motion for pre-petition costs constituted a violation of the stay. The subsequent hearing on the motion and award of fees was a violation of the stay. *See* 11 U.S.C. § 362(a)(1).

*Federal Savings and Loan Association,* 892 F.2d 575 (7th Cir.1989); *Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir.), *cert. dismissed,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). *See also Rett White Motor Sales Co. v. Wells Fargo Bank,* 99 B.R. 12, 15 (N.D.Cal.1989) (action against a defendant "is not a claim against the debtor ... [t]here is simply no language in Section 362(a) designed to stay actions initiated by the debtor. Rather, there is language which specifies that actions against the debtors are those which should be halted"); *In re AMS Realty Inc.,* 114 B.R. 229, 233 (Bankr.C.D.Cal.1990) (since automatic stay was enacted to "protect an estate from actions *by creditors* against the estate," automatic stay would not serve to toll the statute of limitations on an action brought either by a Chapter 7 trustee or a debtor) (emphasis in original).

7. Gordon notes that the plaintiffs had over 50 days to oppose the summary judgments after moving for an extension and prior to filing their bankruptcy petitions.

In order for a bankruptcy judge to award costs and fees, however, the violation must be "willful." 11 U.S.C. § 362(h). The Ninth Circuit has adopted a broad definition of willful, holding that a creditor acts willfully if it knows that a petition has been filed and the act which violates the stay is intentional. *Johnston Environmental Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir. 1993). "This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations." *Crysen/Montenay Energy Co. v. Esselen Assoc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1105 (2d Cir.1990).

The safe course of action for Gordon and the other defendants would have been to obtain relief from the stay from the bankruptcy court before continuing with their motion for summary judgment. But they chose not to. Even though Gordon may have believed in good faith that seeking an award of costs was not a violation of the stay, a broad application of *In re Goodman* dictates that it is.

In addition, Gordon was given several opportunities by the bankruptcy court to enter into a stipulation which would vacate the state court judgment, then allow the stay to be lifted for the state court proceeding to continue. Gordon refused. The bankruptcy court held this to be a willful violation of the stay. *See, e.g., In re Miller,* 10 B.R. 778 (Bankr.D.Md.1981), *aff'd,* 22 B.R. 479 (D.C.Md.1982) (while repossession of debtor's automobile in ignorance of the automatic stay is not willful violation of the stay, refusal to return the automobile upon notification of the bankruptcy is).

Although Gordon did voluntarily file a "Remission of Costs" with the state court which disclaimed any interest in the fees, the trustee had already expended estate funds in filing a complaint in the bankruptcy court against Gordon and the other defendants for willful violation of the stay. *See, e.g., In re Crysen/Montenay Energy Co.,* 902 F.2d at 1105.

For the above reasons, I would affirm the bankruptcy court's finding that Gordon willfully violated the stay. However, since Gordon individually was not responsible for all of the trustee's costs, I would remand for a recalculation of the trustee's costs directly attributable to Gordon's willful violation of the stay.