## In re PALMDALE HILLS PROPERTY, LLC, Debtor.

### Lehman Commercial Paper, Inc., Appellant,

v.

### Palmdale Hills Property, LLC, et al., Appellees.

BAP Nos. CC–09–1100–HPaMk, CC–09–1101–HPaMk, CC–09–1102–HPaMk, CC–09–1103–HPaMk, CC–09–1104–HPaMk, CC–09–1105–HPaMk, CC–09–1106–HPaMk, CC–09–1107–HPaMk. Bankruptcy No. SA 08–17206–ES.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 25, 2009.

Filed Dec. 15, 2009.

Christopher Pace, Weil Gotshal & Manges, LLP, Miami, FL, Attorney for Lehman Commercial Paper, Inc.

Paul John Couchet, Winthrop Couchet Professional Corp., Newport Beach, CA,

Attorney for Palmdale Hills Property, LLC.

Before: HOLLOWELL, PAPPAS and MARKELL, Bankruptcy Judges.

## OPINION

HOLLOWELL, Bankruptcy Judge.

The issue presented in this appeal is whether a debtor violates the automatic stay of its creditor's bankruptcy case when it proposes to equitably subordinate the creditor's claim and transfer the lien securing the claim under § 510(c).[1] Because, in this case, equitable subordination would modify the creditor's property interest, we find it violates the creditor's automatic stay. Accordingly, we REVERSE those provisions of the bankruptcy court's orders on appeal that find otherwise.

## I. FACTS

Lehman Commercial Paper Inc. ("Lehman Commercial") is a debtor in a chapter 11 bankruptcy case in the Southern District of New York. Palmdale Hills Property, LLC ("Palmdale") filed a chapter 11 bankruptcy petition on November 6, 2008, in the Central District of California. The case is being jointly administered with seventeen of Palmdale's related entities ("Debtors").[2] Debtors are part of an integrated network of companies that operate as the Sun Cal Companies, or SunCal, and were formed as part of a joint venture to

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. SunCal Beaumont Heights, LLC, SCC/Palmdale, LLC ("SCC/Palmdale"), SunCal Johannson Ranch, LLC, SunCal Summit Valley, LLC ("Summit"), SunCal Emerald Meadows, LLC ("Emerald Meadows"), SunCal Bickford Ranch, LLC ("Bickford"), Acton Estates, LLC ("Acton"), Seven Brothers, LLC, SJD Part-

ners, Ltd., SJD Development Corp., Kirby Estates, LLC, SunCal Communities I, LLC ("SunCal I"), and SunCal Communities II, LLC ("SunCal II") filed chapter 11 bankruptcies on November 6 and November 7, 2008. North Orange Del Rio Land, LLC, SCC Communities, LLC, and Tesoro SF, LLC, filed chapter 11 on November 19, 2008. There are also nine related entities in involuntary bankruptcy proceedings represented by a court appointed trustee.

develop twenty-one residential real estate projects with affiliates of Lehman Brothers, Inc.

Lehman Brothers and its affiliates, including Lehman ALI, Inc. (ALI)[3] and Lehman Commercial, provided over $2.3 billion in financing for the projects through a series of loan agreements and equity arrangements on Debtors' projects. Among other things, Debtors allege that the structure of these financing arrangements constituted manipulative lending practices and fraudulent conveyances. Debtors contend that the complete control of Lehman Brothers, as well as ALI and Lehman Commercial, over the use of the funds in the loan facility created Debtors' debt burdens and ultimately forced Debtors to file for bankruptcy protection.

On November 10, 2008, soon after filing bankruptcy, Debtors sought blanket relief from the automatic stay in Lehman Commercial's bankruptcy case in the Southern District of New York "to allow the Debtors to generally administer their California Chapter 11 cases in order to avoid the need for having to file repeated relief from stay motions in New York." The bankruptcy court in New York denied the broad relief, but did so without prejudice so that Debtors could refile specific stay relief requests as needed.

Debtors' proposed joint chapter 11 plan of reorganization is based on their attempt to equitably subordinate the claims of ALI and Lehman Commercial ("Lehman Lenders"). On January 6, 2009, Debtors commenced an adversary proceeding against ALI to equitably subordinate its claim. Debtors amended the equitable subordination complaint to include Lehman Commercial as a defendant and proposed to file the amended complaint if the California bankruptcy court determined the complaint would not violate Lehman Commercial's automatic stay.

On January 29, 2009, the Lehman Lenders filed motions for relief from stay in Debtors' bankruptcy case asserting they were owed approximately $649 million in principal, plus interest, on various Lehman Lenders' loans.[4] The loans consisted, in part, of three credit agreements between Lehman Commercial and Debtors including: an agreement executed in November 2005, by SunCal I, which provided for a loan in the amount of $75 million (which increased to $395 million over time and was later reduced to $277 million), secured by a first lien on all the real and personal property owned by Bickford, Acton and Emerald Meadows, as well as a pledge of equity interests held by SunCal I and Summit; a February 2007, agreement with Palmdale for a $264 million loan secured by Palmdale's real property and equity interests; and a March 2007, agreement executed by SCC/Palmdale for a $95 million loan, secured by SCC/Palmdale's property and equity interest in Palmdale. ALI holds a promissory note executed by Bickford in May 2005, in the amount of $30 million secured by a second lien on Bickford's real and personal property.

The Lehman Lenders argued the properties securing the loans lacked equity and were declining in value ("Stay Relief Motion"). The Lehman Lenders also argued that Debtors' reorganization could not succeed since it was premised in part on subordinating Lehman Commercial's claim, which Lehman Commercial argued violated its stay.

---

**3.** ALI is not in bankruptcy.

**4.** As noted below, Debtors challenge whether Lehman Commercial is actually a creditor of the Debtors' estate since some of the loans were determined by the bankruptcy court to have been sold (not transferred for security).

Debtors filed an omnibus opposition to the motion on February 6, 2009 ("Opposition"). Debtors contended they had equity in the properties based on the argument that the Lehman Lenders' claims could be equitably subordinated and the liens transferred to the estate.

On February 20, 2009, the bankruptcy court issued a tentative ruling on the Stay Relief Motion, finding that:

> the existence of the [equitable subordination] claims can be asserted as a defense to the motion for relief from stay. . . . Given movant's assertion of secured claims against Debtors in these bankruptcy estates, Debtors are entitled to assert appropriate defenses to such claims and may do so without violating the automatic stay of the movant.

The parties addressed the tentative ruling during the hearing that same day. At the close of hearing, the bankruptcy court stated the tentative ruling would stand, finding there was not sufficient cause to grant stay relief and that Debtors could pursue equitable subordination, either through an adversary proceeding or through a plan or reorganization, as a defense to Lehman Commercial's Stay Relief Motion, which the court treated as an informal proof of claim. The final orders denying stay relief were entered March 10, 2009 ("Denial Orders"). The Denial Orders held that:

> (a) The [Stay Relief] Motion sufficiently states an express demand referencing the nature and amount of the claim, and therefore Movant's Motion constitutes an informal proof of claim.

> (b) This Court has concurrent jurisdiction to determine the scope and applicability of the automatic stay under 11 U.S.C. § 362(a) and/or (b), arising from the Chapter 11 bankruptcy proceeding of Lehman Commercial Paper Inc. ("Lehman Commercial") as it applies to matters before this Bankruptcy Court.

> (c) The automatic stay arising from the bankruptcy case of Lehman Commercial does not apply to any objection to the claim of Lehman Commercial, any proceeding to subordinate the claim of Lehman Commercial pursuant to 11 U.S.C. § 510(c)(1), and/or the transfer of a lien securing a subordinated claim to the estate pursuant to 11 U.S.C. § 510(c)(2), in this Chapter 11 proceeding.

> (d) The Debtors may object to the claim of Lehman Commercial, seek to subordinate the claim of Lehman Commercial pursuant to 11 U.S.C. § 510(c)(1), and/or seek to transfer a lien securing a subordinated claim to the estate pursuant to 11 U.S.C. § 510(c)(2), via an adversary proceeding or plan, without violating Lehman Commercial's automatic stay.

Lehman Commercial timely appealed the Denial Orders. Lehman Commercial does not contend the bankruptcy court abused its discretion in denying the Stay Relief Motion, but assigns error to the bankruptcy court's determination regarding the scope and application of Lehman Commercial's automatic stay.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and (2)(G) and (O).  We have jurisdiction under 28 U.S.C. § 158.[5]

---

**5.** Debtors argue Lehman Commercial limited the scope of appeal to only the finding made by the bankruptcy court that Debtors, through an adversary proceeding, could subordinate Lehman Commercial's claim without violating Lehman Commercial's stay.  Debtors con-

tend Lehman Commercial did not appeal the related finding that Debtors could, through a plan of reorganization, subordinate Lehman Commercial's claim without a stay violation. Therefore, Debtors argue we lack jurisdiction on the basis that we could not provide effec-

On September 23, 2009, Debtors filed an emergency motion to continue for sixty days the oral argument, which was scheduled on September 25, 2009. The Panel denied the request the same day. Oral argument was held on September 25, 2009.

After oral argument, on October 20, 2009, Debtors filed a motion to dismiss the appeal for lack of jurisdiction as a result of decisions made in the bankruptcy court regarding the ownership of Lehman Commercial's loans ("October Order"). Specifically, the bankruptcy court determined that certain Lehman Commercial loans were sold, not simply transferred to a third party, Fenway Capital ("Fenway Capital Loans"), for security. Thus, in the October Order, the bankruptcy court ruled that Lehman Commercial was not the creditor with respect to the Fenway Capital Loans. The bankruptcy court reserved ruling on whether Lehman Commercial could file proofs of claim as an agent for Fenway Capital.

Debtors argue that Lehman Commercial does not own any interest in the Fenway Capital Loans, and therefore, the automatic stay could not bar subordination of such loans. As a result, Debtors argue the appeals are moot and that Lehman Commercial lacks standing. Lehman Commercial contends that a portion of at least one of the loans was not part of any sale or transfer to Fenway Capital.

■ An appeal is moot if events have occurred that "prevent an appellate court from granting effective relief." *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 493–94 (9th Cir. BAP 2003) *citing First Fed. Bank v. Weinstein (In re Weinstein)*, 227 B.R. 284, 289 (9th Cir. BAP 1998).

■ However, we find that effective relief could be granted to Lehman Commercial, since it is not clear that all the loans Lehman Commercial made to the Debtors were the subject of the October Order. Moreover, Lehman Commercial has filed a motion for clarification of the October Order and the bankruptcy court's findings. Thus, no final order regarding the ownership of the loans has yet been entered (and Lehman Commercial has stated that it will appeal the final order after it is entered).

■ For similar reasons, we find that Lehman Commercial has standing to appeal the Denial Orders. The Ninth Circuit has adopted the "person aggrieved" test as the standard for determining whether a party possesses standing in a bankruptcy appeal. *See, e.g., Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442–43 (9th Cir.1983). The test limits appellate standing to "those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court." *Id.* at 442. Even if Lehman Commercial has no interest in the Fenway Capital Loans, it has an interest in at least one of the loans to Debtors, and furthermore, may possibly have an interest in the Fenway Capital Loans under a contractual repurchase obligation. Lehman Commercial also has an interest if and when the October Order becomes final and is successfully appealed. Therefore, Lehman Commercial has stand-

tive relief to Lehman Commercial. Debtors contend that even if the Panel sets aside the ruling permitting Debtors to prosecute an adversary proceeding to subordinate Lehman Commercial's claim, Debtors would still be able to subordinate Lehman Commercial's claim through their plan. This argument is meritless. Lehman Commercial appealed the Denial Orders in their *entirety*, "specifically, Lehman Commercial appeals the rulings in the Order[s] regarding the scope and application of the automatic stay in Lehman Commercial's chapter 11 case."

ing to appeal the Denial Orders despite the October Order.[6]

Accordingly, we conclude we have jurisdiction over these appeals and address the merits.

## III. ISSUE

Do Debtors violate Lehman Commercial's automatic stay when they attempt to equitably subordinate Lehman Commercial's claims and transfer its liens to the estate?

## IV. STANDARDS OF REVIEW

The scope or applicability of the automatic stay under § 362 is a question of law, which is reviewed de novo. *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir.2005) ("We review the [bankruptcy court's] interpretation of the bankruptcy code as a question of law and, therefore, review it de novo."). Additionally, the determination of whether a particular action is exempt from the automatic stay is a question of law that we review de novo. *Berg v. Good Samaritan Hosp. (In re Berg)*, 198 B.R. 557, 560 (9th Cir. BAP 1996), *aff'd* 230 F.3d 1165 (9th Cir.2000).

## V. DISCUSSION

### A. The Automatic Stay Protects a Debtor's Estate

The filing of a bankruptcy petition creates a bankruptcy estate, which is protected by an automatic stay of actions by all entities to collect or recover on claims. 11 U.S.C §§ 541(a) and 362(a). The automatic stay arising in the bankruptcy court where a debtor files a petition for relief (the home bankruptcy court) applies to all other bankruptcy courts.

*Snavely v. Miller (In re Miller)*, 397 F.3d 726, 731 (9th Cir.2005).

The policy behind § 362 is to protect the estate from being depleted by creditors' lawsuits and seizures of property in order to provide the debtor breathing room to reorganize. *White v. City of Santee (In re White)*, 186 B.R. 700, 704 (9th Cir. BAP 1995). The automatic stay extends to "prevent piecemeal dismemberment" of the bankruptcy estate. *Id.; In re Worldcom, Inc.*, 2003 WL 22025051 at *3 (Bankr.S.D.N.Y. Jan. 30, 2003). Thus, the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay preserves assets for both the estate and creditors. *Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*, 135 B.R. 641, 643 (9th Cir. BAP 1992).

Although the scope of the automatic stay is broad, it does not stay all proceedings. Courts have recognized the automatic stay does not apply to actions against the debtor in the debtor's home bankruptcy court. *In re Miller*, 397 F.3d at 730; *In re N. Coast Vill., Ltd.*, 135 B.R. at 643. Additionally, the automatic stay has been found inapplicable to lawsuits initiated by the debtor. *Eisinger v. Way (In re Way)*, 229 B.R. 11, 13 (9th Cir. BAP 1998) (primary policy considerations do not exist where debtor has initiated a lawsuit against a creditor); *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989) (statutory language refers to actions "against the debtor"). Alternatively, a defendant in an action brought by a plaintiff/debtor may defend itself in that action without violating the automatic stay. *Gordon v. Whit-*

---

**6.** In making this determination, we deny Debtors' Motion to Dismiss Appeal for Lack of Jurisdiction. We do, however, grant Leh- man Commercial's Motion to Supplement Record on Appellee's Motion to Dismiss Appeal, which was filed December 1, 2009.

*more (In re Merrick* ), 175 B.R. 333, 336 (9th Cir. BAP 1994); *In re Way,* 229 B.R. at 13.

Debtors contend Lehman Commercial initiated the action against Debtors by filing its Stay Relief Motion, which was treated by the bankruptcy court as a proof of claim.[7] Debtors argue that because Lehman Commercial initiated the litigation by filing the Stay Relief Motion or a proof of claim against Debtors, Lehman Commercial's automatic stay does not prevent Debtors from prosecuting their equitable subordination claim. *In re Merrick,* 175 B.R. at 336 (a party may defend against an action brought by a debtor without violating the automatic stay); *Hi–Tech Commc'n Corp. v. Poughkeepsie Bus. Park, LLC (In re Wheatfield Bus. Park, LLC* ), 308 B.R. 463, 466 (9th Cir. BAP 2004) (debtor may object to a claim filed in its bankruptcy case without violating the automatic stay).

■ The bankruptcy court agreed that Debtors' equitable subordination claims against Lehman Commercial did not violate Lehman Commercial's automatic stay because they were raised as a defense to the Stay Relief Motion. Because equitable subordination would alter the lien rights of the creditor, we agree that equitable subordination involves the question of a debtor's equity and may be properly asserted as a defense to a motion seeking relief from the automatic stay. *See In re Poughkeepsie Hotel Assocs. Joint Venture,* 132 B.R. 287, 292 (Bankr.S.D.N.Y.1991); *Bialac v. Harsh Inv. Corp. (In re Bialac* ), 694 F.2d 625, 627 (9th Cir.1982) (when debtor's affirmative defenses and counterclaims directly involve the question of the debtor's equity, it is appropriate to hear them in the stay proceeding).

At the hearing on the Stay Relief Motion, the bankruptcy court stated:

> ... the filing of the motion for relief from stay is, and the case law is pretty clear on this, effectively an informal proof of claim. Whether you filed a formal proof of claim or not, you have asserted a claim against the Debtor. It's quite clear that you intend to assert that claim.

> By denying the motion without prejudice that claim remains within this estate. So in my view, if the Debtor wants to proceed to resolve this issue [through equitable subordination] because this issue was presented as a defense to the motion for relief from stay and I think it's an effective defense to the motion for relief from stay but ... they can't litigate that defense here because it is not appropriate to do it in a summary sort of situation.

Hr'g Tr. at 63:8–20 (February 20, 2009).

■ The bankruptcy court correctly recognized that a separate procedure was required to litigate the merits of Debtors' equitable subordination claim. *See* Rule 7001(8) (a request to subordinate an allowed claim or interest requires an adversary proceeding except when a debtor's plan provides for the relief). As one court explained:

> When the defendant debtor through complex and bona fide affirmative defenses or counterclaims seeks affirmative counter relief it is not proper to attempt to determine that issue in the adequate protection hearing and thereby determine finally the amount of the debt which in turn will determine the extent of the creditor's interest which he is entitled to have protected. Rather, the

---

**7.** Lehman Commercial has since filed formal proofs of claim in Debtors' bankruptcy cases. Therefore, we do not reach the issue of whether the bankruptcy court erred in treating the Stay Relief Motion as an informal proof of claim.

counterclaims or affirmative defenses may be severed out and the modification of stay tried on the assumption that the creditor will prevail on the counterclaim. *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. at 290.

■ However, the bankruptcy court conflated the defense of equitable subordination to a motion for relief from stay with equitable subordination as a defensive action against (or objection to) a claim. There is a " 'tremendous difference between *adjudication* of the merits and mere *consideration* of counterclaims and defenses' raised in a motion for stay relief." *Id.* at 293 (quoting *In re Tally Well Serv., Inc.*, 45 B.R. 149, 151 (Bankr.E.D.Mich. 1984)). Courts must "disaggregate" litigation so that "particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay." *In re Miller*, 397 F.3d at 731 (quoting *Parker v. Bain*, 68 F.3d 1131, 1137 (9th Cir.1995)). The adjudication of Debtors' equitable subordination action seeks affirmative relief, and therefore, violates Lehman Commercial's automatic stay. *See In re Enron Corp.*, 2003 WL 23965467, 2003 Bankr.LEXIS 2261, at *23 (Bankr. S.D.N.Y. Jan. 13, 2003).

**B. Under These Facts, Equitable Subordination is Not a Defensive Action**

■ Debtors contend they are "entitled to take any action necessary to defeat" a claim asserted in their bankruptcy case. Thus, Debtors frame their equitable subordination action as a defensive action against Lehman Commercial's claim.

The distinction between defensive and offensive actions affecting a debtor's estate is appropriate in determining the applicability of the automatic stay because courts have held that a debtor may defend against suits brought against it without violating a bankruptcy stay. *Justus v. Fin. News Network, Inc., (In re Fin. News Network, Inc.)*, 158 B.R. 570, 573 (S.D.N.Y. 1993) (distinguishing cases where a party "makes an active attempt to recover property" of a debtor through judicial or adversary proceedings); *In re Merrick*, 175 B.R. at 336. In particular, courts allow debtors to object to creditors' claims on the basis that it is a defense against the assertion of the claim, and therefore, does not violate the creditor's automatic stay. *In re Wheatfield Bus. Park, LLC*, 308 B.R. at 466.

Accordingly, Debtors argue that if the complete elimination of a claim or lien can be achieved through a claim objection without a stay violation, then the "lesser defensive remedy of subordination" cannot be considered an offensive action that violates the automatic stay. We disagree with Debtors' characterization of subordination as a mere defense to a claim or a "lesser remedy" than claim disallowance.

■ A claim is a right to payment. 11 U.S.C. § 101(5)(A). A proof of claim is prima facie evidence of the validity and amount of a claim. Rule 3001(f). A party objecting to a claim has the burden of overcoming the prima facie case by challenging the validity of the claim. In a claim objection, the court investigates the existence, validity, and enforceability of claims and determines whether the claim is allowed by applicable law. *Murgillo v. Cal. State Bd. of Equalization (In re Murgillo )*, 176 B.R. 524, 532–33 (9th Cir. BAP 1995); *USA Capital Realty Advisors, LLC v. USA Capital Diversified Trust Deed Fund, LLC (In re USA Commercial Mortg. Co.)*, 377 B.R. 608, 617 (9th Cir. BAP 2007) ("disallowance of a claim is a legal determination that the claim under consideration is not allowable by law.").

If the claim is disallowed or modified in amount because the asserted claim was found to be unenforceable against the debtor as a matter of law, then the creditor effectively *never* had the right to payment of the claim it asserted. Importantly, if a debtor succeeds in a claim objection, the debtor does not recover property from the creditor. As a result, a debtor is able to challenge (or "defend" against) a claim without impacting a creditor's property rights.

◼ Even though equitable subordination, "if established, may be functionally equivalent to disallowance (i.e., no distribution on the claims)," it is a legally distinct proceeding which seeks to reprioritize the order of allowed claims based on the equities of the case, rather than to disallow the claim in the first instance. *In re USA Commercial Mortgage Co.*, 377 B.R. at 617; *see also In re Enron Corp.*, 2003 WL 23965467, 2003 Bankr.LEXIS 2261 at *26; *In re County of Orange*, 219 B.R. 543, 557 (Bankr.C.D.Cal.1997).

◼ Equitable subordination is sought when a creditor has engaged in some type of inequitable conduct that resulted in injury to the debtor's other creditors or conferred an unfair advantage on the claimant. *United States v. Noland,* 517 U.S. 535, 538–39, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). It is an unusual remedy, applied only in limited circumstances. *Id.; Feder v. Lazar (In re Lazar* ), 83 F.3d 306, 309 (9th Cir.1996).

◼ Section 510(c)(1) allows for subordination of otherwise allowed claims "when

the principles of equity would be so offended by the allowance of such claims on a parity with those of other creditors." 4 COLLIER ON BANKRUPTCY ¶ 510.01 (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev.2009). If the subordinated claim is secured by a lien, under § 502(c)(2), the lien is transferred to the debtor's estate. The subordinated lien claim becomes unsecured and the property securing such claim becomes part of the debtor's estate.

Thus, unlike in claim disallowance, in the situation of equitable subordination, a creditor *has* the right to payment on its claim, but that property right may be modified by the bankruptcy court based upon equitable principles.[8] This key difference turns Debtors' assertion of equitable subordination as a proper defense to Lehman Commercial's Stay Relief Motion into an offensive action against Lehman Commercial's property.

◼ As the Panel has previously noted: the proper exercise of the bankruptcy court's equitable powers under § 502 is through investigation into the existence, validity and enforceability of claims leading to their allowance or disallowance; and the proper exercise of equitable powers regarding an allowed claim is through the equitable subordination provisions of § 510(c).

*In re Murgillo*, 176 B.R. at 533; *Benjamin v. Diamond (Matter of Mobile Steel Co.)*, 563 F.2d 692, 699 (5th Cir.1977)(equitable considerations can only justify subordination of claims, not their disallowance). Importantly, misconduct on the part of a

---

8. We do not agree that Lehman Commercial's assertion of the automatic stay will paralyze Debtors' reorganization or thwart the principles of bankruptcy law because of Lehman Commercial's "running around the country demanding that all other chapter 11 debtors yield to its automatic stay." Appellee's Brief at 14–15, 27. Lehman Commercial has a

right to protect its estate from diminishment of its assets by others, which here includes Debtors' proposed modification of its rights, including its lien rights. Furthermore, Debtors are not without a remedy. They can seek relief from stay in Lehman Commercial's case where their earlier motion was denied without prejudice.

creditor, when directed against a debtor, gives a debtor a clear defense to invalidate a claim under § 502. *See In re Mobile Steel Co.*, 563 F.2d at 699 n. 10. However, in this case, Debtors have not sought to disallow the claim on principles of misconduct or fraud; they have commenced an adversary proceeding to equitably subordinate Lehman Commercial's claims and transfer the liens securing the claims to Debtors' own bankruptcy estate.

This scenario differs markedly from a case cited by Debtors, *In re Metiom*, 301 B.R. 634 (Bankr.S.D.N.Y.2003). *Metiom* involved an unsecured claim. The facts of this case differ from *Metiom* because, here, Lehman Commercial's claims are secured and Debtors are seeking to transfer the liens to the estate. Such affirmative relief was not part of the *Metiom* case where the equitable subordination, along with § 547 and § 549, were included as alternatives in debtor's claim objection and the bankruptcy trustee expressly waived any affirmative relief or damages resulting from the creditor's postpetition conduct. *Id.* at 637. There is no analysis in *Metiom* that focuses on whether equitable subordination under § 510(c)(2) violates the automatic stay.

■■■■ Simply because Lehman Commercial filed a proof of claim (whether formally or informally) does not mean that Debtors may take *any* action against Lehman Commercial without violating Lehman Commercial's automatic stay. Debtors

may not initiate an action or proceeding against Lehman Commercial that seeks affirmative relief, such as a counterclaim without violating the automatic stay.[9] *In re Miller* 397 F.3d at 732. In this case, Debtors' subordination action seeks affirmative control over property of Lehman Commercial's bankruptcy estate by proposing to alter the priority of Lehman Commercial's claim and the transfer of Lehman Commercial's lien rights to Debtors' estate. Thus, equitable subordination seeks affirmative relief: the modification of a claimant's valid claim and property interest. 4 COLLIER ON BANKRUPTCY, ¶ 510.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009) ("Because subordination under § 510 involves valid claims, the claimant has a property interest that would be modified by subordination. The notice and hearing requirement, therefore, is a basic due process protection."). Accordingly, we find the adjudication of Debtors' equitable subordination claim violates Lehman Commercial's automatic stay.

■■■■ One of the purposes of the automatic stay is to protect the bankruptcy court's jurisdiction over the debtor and the property of the estate. The protection of Lehman Commercial's automatic stay did not evaporate when it filed a proof of claim in Debtors' bankruptcy case. *See In re Miller*, 397 F.3d at 732. If Debtors were allowed to subordinate Lehman Commercial's claim in the California bankruptcy

---

9. The dissent points to recoupment as a counterclaim that should be permitted because it seeks to adjust the amount of debt owed, and makes an implied correlation to equitable subordination as another type of counterclaim that should be permitted, for the same reasons. Recoupment, however, "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392,

1399 (9th Cir.1996). It is an equitable common law doctrine to net out debts and allow the defendant to recoup payments made against the claim and is not limited to prepetition claims. It is not subject to the automatic stay. *Sims v. United States Dept. Of Health & Human Serv. (In re TLC Hospitals, Inc.)*, 224 F.3d 1008, 1011 (9th Cir.2000). Equitable subordination, however, involves the subordination and reprioritization of an *allowed claim* and is, therefore, not the equivalent of a recoupment claim.

court without first seeking stay relief in Lehman Commercial's home bankruptcy case, Lehman Commercial's creditors would have no notice or opportunity to challenge the action even though their rights would be affected by the subordination action.

■ Therefore, while the California bankruptcy court may have concurrent jurisdiction to determine the scope or applicability of the automatic stay, the New York bankruptcy court must have the final say as to whether the automatic stay applies to the bankruptcy case before it. *See Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp. Litig.)*, 765 F.2d 343, 347–48 (2nd Cir.1985)(even though district court had jurisdiction to determine applicability of stay, asserting that jurisdiction would frustrate the debtor's reorganization efforts in the bankruptcy case); *Gruntz v. County of L.A. (In re Gruntz )*, 202 F.3d 1074, 1079, 1081–82 (9th Cir.2000) (the automatic stay, which is an injunction issuing from the authority of the bankruptcy court, is the primary means to centralize the control over and administration of bankruptcy cases). Debtors are not hamstrung by this decision; Debtors may either seek relief from stay or initiate the equitable subordination action against Lehman Commercial in the New York bankruptcy case.

### CONCLUSION

For the forgoing reasons, we RE-VERSE and void those provisions of the Denial Orders that find Debtors may prosecute an adversary proceeding, or propose a reorganization plan, seeking to equitably subordinate Lehman Commercial's claim and transfer its liens to the estate in the California bankruptcy case without first obtaining relief from the automatic stay in the New York bankruptcy case.

MARKELL, Bankruptcy Judge, dissenting:

I respectfully dissent. The majority essentially holds that a debtor may not, in its own bankruptcy, unilaterally defend against a lender's inequitable claim if that lender is also a bankruptcy debtor. I disagree.[1]

The central inquiry here is what a debtor may do in response to a creditor's filing a proof of claim.[2] Normally, this inquiry presents no issue. The only limits are those imposed by the relevant nonbankruptcy law. As recognized by the lender's home bankruptcy court, that law includes the law of equitable subordination. *See In re Metiom*, 301 B.R. 634 (Bankr.S.D.N.Y. 2003) (permissible to join equitable subordination allegation with general claims objection).

Here, however, the creditor is also a debtor in bankruptcy. As such, the creditor is entitled to the benefits of the automatic stay with respect to actions against it and its estate. That much is undisputed.

---

1. I do not disagree, however, with the majority's treatment of the mootness and standing issues addressed in Part II of the opinion. I therefore join the majority in its decision to reach the merits, and in its disposition of the Debtors' motion to dismiss and of Lehman Commercial's motion to supplement the record.

2. As the majority also points out, the issue was presented in the bankruptcy court in the context of the Debtors' response to Lehman Commercial's relief from stay motion. But during the case and after the motions leading to this appeal were filed, Lehman Commercial filed proofs of claim related to the debt that formed the basis of the requested stay relief. At oral argument, counsel for Lehman Commercial conceded that, due to a lack of any prejudice, the legal issue as framed in the text is identical to the issue litigated in the bankruptcy court.

What is disputed is whether the lender's stay extends to the Debtors' equitable subordination claims raised in response to the lender's assertion of its claim in the Debtors' bankruptcy. In holding that the lender's stay extends to such actions, but not to any efforts to disallow outright the same claims, the majority's opinion essentially holds that equitable subordination claims are not related to the adjustment of debtor-creditor rights.

Existing law does not mandate this result. The Code and our precedents recognize implicit equitable exceptions to the automatic stay that permit a debtor to defend against a filed proof of claim in any manner permitted by applicable nonbankruptcy law. All the bankruptcy court did here was to protect that right. Even if I am wrong, however, I believe Lehman Commercial waived its right to raise automatic stay issues when it filed its proof of claim. I would therefore affirm the bankruptcy court's ruling.

Although I believe this case is controlled by recognized exceptions to the automatic stay, those exceptions are not found in § 362(b). While § 362(b) lists explicit exceptions to the automatic stay, there are additional, implicit, equitable exceptions necessary for a practical and functioning bankruptcy system. One is that a creditor does not need relief from stay to seek relief from stay. Another is that a creditor does not need relief from stay to file and prosecute a proof of claim. Common

sense dictates both these exceptions, even if § 362(b) does not mention them.

Our precedents identify a third equitable exception: a debtor need not seek relief from stay to object to a proof of claim filed by a creditor who coincidentally happens to be a debtor in bankruptcy. As we stated in *Hi–Tech Commc'n. Corp. v. Poughkeepsie Bus. Park, LLC (In re Wheatfield Business Park, LLC)*, 308 B.R. 463, 466 (9th Cir. BAP 2004), "the automatic stay does not apply under such circumstances." *See also Eisinger v. Way (In re Way)*, 229 B.R. 11, 13 (9th Cir. BAP 1998); *Gordon v. Whitmore (In re Merrick)*, 175 B.R. 333, 338 (9th Cir. BAP 1994).

*Merrick* provides the analytical underpinning for this equitable exception. In *Merrick*, we noted that:

> [A]n equitable principle of fairness requires a defendant to be allowed to defend himself from the attack without imposing on him a gratuitous impediment in dealing with an adversary who suffers no correlative constraint. The automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate.

*Merrick*, 175 B.R. at 338.

The majority rejects *Merrick* and our other precedents as inapplicable on two grounds. Initially, they contend that we permitted these equitable exceptions only in the context of disallowance of a claim under § 502 but not subordination under § 510, and therefore any attempt to subordinate Lehman Commercial's claim under § 510 would be "offensive." [3] Second, the

---

**3.** The majority states that any action which "seeks affirmative relief, such as a counterclaim violates the automatic stay." To the extent that this could be read to imply that all counterclaims seek affirmative relief. I disagree. Recoupment, for example, typically is asserted by counterclaim, and should not be considered offensive. *Cf. Bull v. U.S.*, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) ("recoupment is in the nature of a

defense arising out of some feature of the transaction upon which the plaintiff's action is grounded"); *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 432 (S.D.Tex. 2008) ("recoupment is a common-law, equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff").

majority notes that Lehman Commercial's claim is secured. Therefore, they believe that any subordination pursuant to § 510 would adversely affect Lehman Commercial's property interest and violate § 362(a)(3) as it applies in Lehman Commercial's bankruptcy estate.

Neither of these arguments is convincing. The majority initially distinguishes between claim allowance and claim subordination. Under these facts, this is a distinction without a difference. A bankruptcy court has core jurisdiction over "proceedings affecting the ... adjustment of the debtor-creditor ... relationship." 28 U.S.C. § 157(b)(2)(O). Along with claim disallowance, equitable subordination has historically been one such proceeding within that broad grant of jurisdiction. Long before the enactment of the 1978 Bankruptcy Code, the Supreme Court had recognized that "[i]n appropriate cases, acting upon equitable principles, [the bankruptcy court] may also subordinate the claim of one creditor to those of others in order to prevent the consummation of a course of conduct by the claimant which, as to them, would be fraudulent or otherwise inequitable." *Heiser v. Woodruff*, 327 U.S. 726, 732–33, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

*Heiser* and § 510(c) confirm that equitable subordination has a venerable history as a doctrine available to avoid inequitable distributions. With this heritage, equitable subordination is surely as much a part of the adjustment of debtor-creditor rights as is claim disallowance. I thus fail to see any link between § 510's language regarding application to "allowed claims" and the nonapplicability of *Merrick* equitable prin-

ciples. Put another way, there is no good reason to require a bankruptcy estate to seek permission from another court to avoid inequitable results in its own case, so long as what is sought is confined to the defense of the claim asserted. Any other result unnecessarily hobbles estates in their attempt to maximize fair returns to their creditors.[4]

The unfairness of the majority's position can be seen under the facts present here. When Lehman Commercial sought to establish its claim, the Debtors had a duty on behalf of the estate to respond by raising all appropriate responses. The Debtors believed this response included a challenge to the equity of Lehman Commercial's claimed priority. But the majority's position would have required the Debtors to obtain permission from Lehman Commercial's home bankruptcy court before responding on this ground. This extra step is just the type of "gratuitous impediment in dealing with an adversary who suffers no correlative constraint" that *Merrick* condemned. *See also In re Metiom*, 301 B.R. 634 (Bankr.S.D.N.Y.2003) (under prior version of Rule 3007, court finds that joining equitable subordination to claims objection permissible).

The majority's reliance on § 362(a)(3) also does not survive scrutiny. In this context, adjustment of lien priorities is no different from an adjustment of claim priorities. A lien is nothing but an incident of the debt it secures; there can be no lien without a debt to support it. *See, e.g., Satsky v. United States*, 993 F.Supp. 1027, 1029 (S.D.Tex.1998). As a result, if no stay relief is necessary to adjust priority of

---

4. There is also nothing in the history of § 510 that should cause equitable subordination claims to be treated differently. Indeed, Congress intended "that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of

this principle." 124 CONG. REC. 32, 398 (1978) (statement of Rep. Edwards); *id.* at 33, 998 (statement of Sen. DeConcini). *See also*, 4 COLLIER ON BANKRUPTCY ¶ 510.05 (15th rev. ed.2009).

payment, no stay relief should be necessary to adjust liens securing those debts. The majority's position essentially allows creditors to immunize inequitable conduct from equitable subordination by the simple expedient of taking a security interest.

Finally, the majority's fears that the bankruptcy court's ruling could somehow usurp the alleged right of Lehman Commercial's home court to determine whether subordination would violate § 362(a)(3) are easily allayed. By filing the proof of claim, Lehman Commercial clearly put its entire claim at risk. At a minimum, Lehman Commercial impliedly consented to have all its claims against the Debtors adjudicated in the Debtors' bankruptcy case. *Metiom*, a decision from Lehman Commercial's home court, holds as much. Moreover, as the Ninth Circuit has made explicit, "[w]hen a creditor submits to bankruptcy court jurisdiction by filing a proof of claim in order to collect all or a portion of a debt, it assumes certain risks ... bankruptcy converts the creditor's legal claim into an equitable claim to a pro rata share of the res." *Hong Kong & Shanghai Banking Corp. Ltd. v. Simon (In re Simon)*, 153 F.3d 991, 997 (9th Cir.1998).

It is the height of formalism—and the nadir of equity—to allow Lehman Commercial to file its proof of claim under an implied waiver from the Debtors' stay, only to deny the Debtors a correlative and reciprocal waiver with respect to any accepted challenge to that proof of claim.

For these reasons, I would affirm.

